**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**SANDRA D. KEESEE,**

      **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　Case No. 6:03-cv-1746-Orl-31JGG

**BANK OF AMERICA, NA,**

      **Defendant.**

# ORDER

Before the Court is Defendant Bank of America's ("BOA") Motion for Attorney's Fees and Costs (Doc. 82) and Plaintiff Sandra Keesee's Opposition (Doc. 83) thereto.

**I.     Introduction**

Keesee initially filed this civil action in state court, and BOA thereafter removed the action to this Court. Keesee's claims were for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Florida Civil Rights Act of 1992, FLA. STAT. § 760 *et seq.* ("FCRA").[1] Well into this action, BOA served Keesee with a settlement proposal according to Florida Statute § 768.79 ("Section 768.79") among other provisions. Keesee did not accept BOA's settlement proposal, and about six weeks after BOA served its proposal, the Court granted Summary Judgment in BOA's favor.

---

[1] Although Keesee initially asserted only state-law claims of discrimination (Docs. 2-3), she eventually filed a Second Amended Complaint (Doc. 26), which included virtually identical, federal-law claims. The Second Amended Complaint was filed with leave of the Court (*see* Doc. 25) and with BOA's consent. As the amended claims arose out of the conduct alleged in the original complaint, the claims relate back to the date of the original pleading. FED. R. CIV. P. 15(c)(2).

BOA now seeks an order requiring Keesee to pay $38,277.65 in attorney's fees BOA purportedly accrued since service of its proposal. Keesee contends that she should not be held liable for BOA's attorney's fees, in relevant part, because Section 768.79 does not apply to this action under the principles announced in *Erie Railroad Company v. Tompkins*, 304 U.S. 64 (1938), and related cases. The Court agrees that this is not an action in which Section 768.79 applies.

**II.  Analysis**

Section 768.79 provides, in relevant part, that:

> In any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees incurred by her or him . . . from the date of filing of the offer if the judgment is one of no liability . . .

FLA. STAT. § 768.79(1). The purpose and intent of this statute is "to encourage parties to settle claims without going to trial." *Aspen v. Bayless*, 564 So.2d 1081, 1083 (Fla. 1990). For this reason, Florida courts are to apply Section 768.79 even to actions under the substantive law of other states because such actions place the same burden on the Florida courts as actions under the substantive law of Florida. *BDO Seidman, LLP, v. British Car Auctions, Inc.*, 802 So.2d 366, 369 (Fla. 4th DCA 2001). It is, therefore, evident that Section 768.79 can act independently of claims arising under Florida law. At issue is whether Section 768.79 applies in the instant action, which arises under Title VII.

BOA contends that Section 768.79 is a "substantive" rule of decision, that this case is based on diversity jurisdiction, and that this Court must, therefore, apply the statute according to the analysis in *Erie*. In this regard, BOA misapprehends the nature of the instant action and misinterprets the meaning, scope, and application of *Erie*.

*Erie* is a watershed precedent in which the Supreme Court stated a beguilingly succinct rule: "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *Erie*, 304 U.S. at 78. *Erie* held, in essence, that federal courts are to apply state law, including state common law, in deciding diversity cases. *Id*. The contours of *Erie's* holding are not obvious or simple, and efforts to distill the holding by rule of thumb can easily lead to error.

Litigants and courts often use a "substance" versus "procedure" dichotomy in finding the rules of decision to apply in actions before federal courts. The theory is that if a state-law rule is procedural, a federal court should apply a conflicting federal rule, but if a state-law rule is substantive, a federal court should apply the state-law rule. Troubling, however, is that "[t]he line between 'substance' and 'procedure' shifts as the legal context changes." *Hanna v. Plumer*, 380 U.S. 460, 471 (1965). As the Supreme Court stated in its first significant revisitation of *Erie*, in *Guaranty Trust Company of New York v. York*, 326 U.S. 99, 108 (1945):

> Matters of 'substance' and matters of 'procedure' are much talked about in the books as though they defined a great divide cutting across the whole domain of law. But, of course, 'substance' and 'procedure' are the same key-words to very different problems. Neither 'substance' nor 'procedure' represents the same invariants. Each implies different variables depending upon the particular problem for which it is used.

*Erie* and its progeny lay down a far more textured framework for analyzing the variant contexts within which a choice between federal law and state law arises. *See, e.g., Hanna*, 380 U.S. 460; *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525 (1958); *Guaranty Trust*, 326 U.S. 99.

One notable commentator has delineated the following test to determine when federal law may apply in diversity actions:

> If there is no conflict between state and federal law, both are to be applied. But if state and federal law are inconsistent, the following questions must be asked. First, is there a valid federal statute or Federal Rule of Procedure on point, such as a provision of the Federal Rules of Civil Procedure or the Federal Rules of Appellate Procedure? If so, then the federal law is to be applied, even if there is conflicting state law. If there is not a valid statute or Rule of Procedure, the second question is whether the application of the state law in question is likely to determine the outcome of the lawsuit. If the state law is not outcome determinative, then federal law is used. But if the state law is deemed to be outcome determinative, then [a] third question is asked: Is there an overriding federal interest justifying the application of federal law? If state law is outcome determinative and there is no countervailing federal interest, then state law controls. Otherwise, federal law is applied. In applying this test, federal courts are to be guided by the goals of the *Erie* doctrine, which are to prevent forum shopping and the inequitable administration of justice.

ERWIN CHEMERINSKI, FEDERAL JURISDICTION § 5.3.5 at 316-17 (4th ed. 2003). In this manner, an analytical framework is posed for the *Erie* doctrine, which derives, at base, from federal statute and ultimately the Constitution – viewed, of course, in its context: a dual sovereignty.

The Rules of Decision Act, 28 U.S.C. § 1652, formally entitled "State laws as rules of decision," provides that:

> The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.

Congress, in this regard, divided the rules on which the judicial power of the United States is to operate. As to the judicial power, the Constitution provides, in relevant part, that:

> The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish.
> . . . .
>
> The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority; . . . – to Controversies . . . between citizens of different States . . . .

U.S. CONST. Art. III §§ 1-2.  Amongst the various provisions in the Constitution, this latter provision embodies sovereign power vested in the federal government.

The Constitution grants judicial power that extends to "Cases," not merely claims, arising under the Constitution and acts of Congress. *Id.* § 2.  The Constitution also grants judicial power to hear "Controversies" between citizens of different states. *Id.*  Congress has vested the judicial power in federal district courts in the following, among other, terms:

- "The district courts shall have original jurisdiction of all civil actions ***arising under*** the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331 (emphasis added);

- "The district courts shall have original jurisdiction of all civil actions ***where the matter in controversy*** exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States," 28 U.S.C. § 1332(a) (emphasis added); and

- "[With certain exceptions], in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same ***case or controversy*** under Article III of the United States Constitution," 28 U.S.C. § 1367(a) (emphasis added).

It is not happenstance that Congress selected these terms; they include clear references to the Constitution.  What the terms reflect and what the Constitution, itself, contemplates is a system of federal courts capable of acting in two similar – but distinct – capacities.

Federal courts are forums that may decide "Controversies," so-called "diversity cases," between citizens of different states and based solely on state-law claims; and when federal courts do so, they are generally required to decide the matter as would a state court. *Guaranty Trust*, 326 U.S. at 108-10.  This entails federal courts acting as neutral fora in controversies where state statutory- and common-law rules are generally the rules of decision. *See* 28 U.S.C. § 1652; *Erie*, 304 U.S. at 78.  Yet, even in such diversity cases, distinctions between state and federal courts

sometimes result in situations where federal-law rules apply despite contrary state-law rules. *See, e.g.*, *Hanna*, 380 U.S. at 471-74 (applying federal, rather than conflicting state, service-of-process rule); *Byrd*, 356 U.S. at 538 (submitting issue to jury despite contrary state-law rule).  This is so because "[t]he federal system is an independent system for administering justice to litigants who properly invoke its jurisdiction."  *Byrd*, 356 U.S. at 537.

Regardless of the federal courts' capacity to act as fora in diversity cases, however, the primary power of federal courts is to decide "Cases" arising under the Constitution, laws, and treaties of the United States.  U.S. CONST. Art. III § 2.  In these latter, so called "federal-question," cases federal district courts sit as common-law courts of a sovereignty instituted by grant from the citizenry and vested with supremacy within certain enumerated powers.  *Id.* §§ 1-2; 28 U.S.C. § 1331.  As the Supreme Court observed in *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 405 (1819), "[i]f any one proposition could command the universal assent of mankind, we might expect it would be this – that the government of the Union, though limited in its powers, is supreme within its sphere of action."  The power of federal courts and their sphere of action in federal-question cases is to say what the law is and, in applying it to particular situations, necessarily expound and interpret that law.  *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).  The Constitution provides this power, U.S. CONST. Art. III § 2; Congress has vested this power through original jurisdiction in the district courts and appellate jurisdiction in circuit courts, 28 U.S.C. §§ 1331, 1291; and the Constitution further requires that the Supreme Court have this power as an appellate court, U.S. CONST. Art. III § 2.  In this regard, federal decisional- or common-law along with the Constitution, laws, and treaties of the United States provide the supreme rules of decision in federal-question cases.

Whereas consideration of state-law claims solely under diversity jurisdiction is a delicate art bearing deference to a state's sovereignty, consideration of state-law claims in federal-question cases is essentially an equitable accommodation. Under venerable common-law practice and procedure, all claims arising from the same transaction or occurrence must usually be litigated in a single case or otherwise waived. *See, e.g.*, FED. R. CIV. P. 8(a), 13(a); *Citibank, N.A. v. Data Leasing Fin. Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990); FLA R. CIV. P. 1.110(b), 1.170(a); *Kimbrell v. Paige*, 448 So.2d 1009, 1012 (Fla. 1984). Federal courts should, of course, treat state-law claims with due deference, but that does not require a federal court to conform or subordinate federal law to any state-law rule; quite the contrary. The states (or the citizenry) retain all powers not delegated to the United States by the Constitution, U.S. CONST. amend X; but the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land," *Id.* Art. VI. In order that no one state's law achieve a pride of place over that of other states or the United States, itself, a federal court must in federal-question cases first carefully decide the federal claim(s). To the extent a state-law claim is not inconsistent with the federal claim(s) so decided, a federal court may thereafter uphold the state-law claim. Nevertheless, federal courts should take care not to interpret any state-law claim so as to undermine federal law or to diminish a right arising under federal law – the law that is to remain supreme. *See Hines v. Davidowitz*, 312 U.S. 52, 67-68 (1941) (holding that state law cannot stand "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress").

In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), the Supreme Court determined the standard by which a prevailing defendant in a Title VII case can recover attorney's

fees from a plaintiff.  The Court held as a general rule in the United States that litigants must pay their own fees, unless a litigant has proceeded in bad faith or a relevant statute provides for fee shifting.  *Id*. at 415-16, 419.  The Court held that Title VII altered a general federal rule by allowing fees to a prevailing *plaintiff* in all but special circumstances; that Title VII was so drawn to effectuate a strong policy against discrimination and encourage potential plaintiffs to challenge perceived discrimination; but that Title VII, nonetheless, permits a prevailing defendant to recover fees, only if a plaintiff's claim proves frivolous, unreasonable, or groundless, or the plaintiff continued to litigate after the claim clearly became so.  *Id.* at 417-22.  In this regard, the Court found a delicate balance of interests struck in Title VII, a balance consistent with Congressional intent and the federal judicial process.  *Id*. at 418-19.  If or when a plaintiff's claim or continued litigation warrants liability for a defendant's attorney's fees is an issue that *Christiansburg* puts to district-court discretion.  *Id*. at 423-24.

In the instant case, a series of factors have drawn Florida law into conflict with the federal law set forth in *Christiansburg*.  This Court has granted summary judgment to BOA because Keesee failed to raise an issue of material fact as to whether BOA unlawfully discriminated against her in violation of Title VII.  The FCRA, Florida's anti-discrimination law, is patterned so closely after Title VII that the two acts are considered essentially co-extensive; cases disposing of Title VII claims are equally dispositive in regard to claims under the FCRA.  *See Harper v. Blockbuster Entm't, Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).  Accordingly, this Court's summary-judgment decision effectively decided Keesee's FCRA claim, albeit *sub silentio*.  Nevertheless, Keesee's claims, in this Court's judgment, were not (nor did they become clearly) frivolous,

unreasonable, or groundless so as to warrant fee shifting under the *Christiansburg* rule.[2] Application of Section 768.79, following BOA's proposal, however, calls for a mandatory award of attorney's fees to BOA. To apply Section 768.79 would, therefore, override the discretionary test and balance set forth in *Christiansburg*. *See* 434 U.S. at 422-24.

As this case arises under federal law, it is not a case subject to the *Erie* doctrine. Regardless of whether Section 768.79 is seen to create some substantive interest,[3] it cannot apply to undermine federal law or to diminish a federal right. In *Christiansburg*, the Supreme Court

---

[2] BOA has not sought attorney's fees under the *Christiansburg* rule and, therefore, apparently concedes that Keesee's claims were not frivolous, unreasonable, or groundless.

[3] The Court has doubt that Section 768.79 should be considered "substantive" for *Erie* purposes. Section 768.79 is a provision of broad application. It purports to apply irrespective of any contractual arrangement (*e.g.*, an insurance policy), and its fee provision is disembodied from any particular substantive cause of action (*e.g.*, lawsuit on insurance policy, claim under FCRA, etc.). *Cf. People of Sioux County, Nebraska v. National Surety Co.*, 276 U.S. 238, 242-43 (1928) (concerning statute that provided attorney's fees to insurers as a measure of relief in lawsuits on insurance policies). Section 768.79, furthermore, carries a purpose directed to court practice and procedure – "to encourage parties to settle claims without going to trial." *Aspen*, 564 So.2d at 1083. Although Florida legislature may have a strong policy favoring the reduction of court case loads, *see BDO Seidman*, 802 So.2d at 369, that policy appears self-evidently limited to Florida courts.

Federal Rule of Civil Procedure ("Rule") 68 provides a mechanism for a party to obtain "costs" accruing after an opponent rejects an offer of judgment, if the opponent ultimately recovers less than the judgment offered. FED. R. CIV. P. 68. "Costs" under Rule 68 may include attorney's fees, if the underlying cause of action provides attorney's fees as a measure of costs. *See Marek v. Chesney*, 473 U.S. 1, 9 (1985). Rule 68 appears to incorporate a basic procedural facet of the federal judicial process; it reflects the notion that a "right" to attorney's fees derives "substance" from a contractual arrangement or from a substantive cause of action that provides an exception to the "American Rule" – *i.e.*, that parties generally bear their own attorney's fees. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 254-57 (1975). Rule 68 is consistent with the notion that a division exists between substantive causes of action (and attendant rights) and general matters of court practice and procedure. In Section 768.79, the Florida legislature appears to have made a foray into the realm of Florida court practice and procedure. One might argue that Rule 68 applies to the exclusion of Section 768.79 because Rule 68 is not "outcome determinative" and is part of the housekeeping rules of federal courts, a judicial system distinct from state courts. *Hanna*, 380 U.S. at 472-73; *Byrd*, 356 U.S. at 537-38; CHEMERINSKI, *supra*, § 5.3.5.

found a balance Congress set so as to encourage plaintiffs appropriately to pursue Title VII claims. In doing so, the Supreme Court considered Title VII in the context of federal law and appropriately did not conform or subordinate federal law to the law of any one state. *See Christiansburg*, 434 U.S. at 415-22. As Title VII and FCRA claims (as currently interpreted) are effectively inseparable, Section 768.79, if applied, would expose plaintiffs to greater risk and upset the substantive balance of interest embodied in Title VII. *Id.* at 418-19. Regardless of how an *Erie* analysis would turn out, the beginning and end of the analysis in this federal-question case is whether Section 768.79 is inconsistent with federal law. Section 768.79, as discussed, is inconsistent and must yield.

Consistent with the foregoing analysis, this Court finds BOA's citations to the following cases inapposite: *McMahan v. Toto*, 311 U.S. 1077 (11th Cir. 2002) (diversity case); *McMahan v. Toto*, 256 F.3d 1120 (11th Cir. 2001) (same); *Tanker Management, Inc. v. Brunson*, 918 F.2d 1524, 1527-28 (11th Cir. 1990) (diversity case finding Section 768.79 inapplicable). Furthermore, to the extent they are inconsistent with the foregoing analysis, this Court disagrees with the attorney-fees decisions in: *Farmer v. United Space Alliance, LLC*, 6:00-cv-189-Orl-28JGG (M.D. Fla. Oct. 3, 2001) (applying Section 768.79 in a case arising under Title VII); *De Miguel v. Watermark Communities, Inc.*, 01-4138-civ-Jordan (S.D. Fla. June 17, 2003) (same); *Schultz v. School Board of Miami-Dade County, Florida*, 00-3496-Civ-Moreno (S.D. Fla. Oct. 24, 2003) (same); *Balboni v. Law Offices of David J. Stern, P.A.*, 9906009-civ-Ferguson/Snow (S.D. Fla. March 12, 2002) (applying Section 768.79 to FCRA claims in a case arising under Title VII).

**III.  Conclusion**

For the foregoing reasons, it is hereby

**ORDERED** that Defendant BOA's Motion for Attorney's Fees and Costs is **DENIED** insofar as it requests an award of attorney's fees.  The Court will enter a separate order in regard to BOA's request for costs.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 1, 2005.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record